Filed 3/10/26  In re D.M. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re D.M. et al., Persons Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPTARTMENT OF PUBLIC SOCIAL SERVICES, | E087244 |
| Plaintiff and Respondent, | (Super.Ct.No. DPRI2300379) |
| v. | OPINION |
| J.M. et al., | |
| Defendants and Appellants. | |

APPEAL from the Superior Court of Riverside County.  Walter H. Kubelun, Judge.  Conditionally reversed and remanded.

Marissa Coffey, under appointment by the Court of Appeal, for Defendant and Appellant, J.M.

Konrad S. Lee, under appointment by the Court of Appeal, for Defendant and Appellant, J. L.

1

Minh C. Tran, County Counsel, and Prabhath Shettigar, Deputy County Counsel, for Plaintiff and Respondent.

INTRODUCTION

J.L. (Mother) and J.M. (Father) appeal from the juvenile court's order terminating their parental rights to their three daughters. The parents' sole argument is that the Riverside County Department of Public Social Services (DPSS) failed to discharge its duties of initial and further inquiry under the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.) (ICWA) and California's implementing provisions, and DPSS concedes the errors.[1] We agree with the parties and therefore conditionally reverse the order terminating parental rights and remand with directions.

FACTUAL AND PROCEDURAL BACKGROUND

The subjects of this appeal are the parents' three daughters (the girls)—D.M. (born in March 2020), M.M. (born in September 2021), and L.M. (born in September 2023). The girls have two older brothers (the boys)—J.M. (born in April 2017) and R.M (born in October 2018)—who were part of the dependency proceedings but are not part of this appeal because the juvenile court had not held the boys' section 366.26 hearing when the parents filed their notices of appeal.

In October 2023, DPSS filed dependency petitions for all five children under section 300, subdivisions (b) and (g), alleging that the parents abused controlled substances, engaged in domestic violence in the presence of the children, failed to

---

[1] Unlabeled statutory citations refer to the Welfare and Institutions Code.

provide a safe and stable home for the children, and neglected the children's basic medical and dental needs. The petitions also alleged that Father, whose whereabouts were then unknown, had unresolved mental health issues and inappropriately disciplined the children, and that Mother had a criminal history and was currently incarcerated and unable to provide the children with care and support.

Shortly after the filing of the petitions, DPSS located Father, and both parents filed ICWA-020 forms denying any Indian ancestry.[2] In interviews with the social worker, Mother mentioned that she had two siblings—a sister who lived in Texas and a brother—and that her mother (the maternal grandmother) was deceased. Father told the social worker that he was currently living in Moreno Valley with his mother (the paternal grandmother), who had "Cherokee Indian" ancestry but was not registered with any tribe. He gave the social worker the paternal grandmother's first and last name and her phone number. Father had three sisters (the paternal aunts)—Jasmine, Jessena, and Sherry. He said that he had an "amazing" relationship with his mother and sisters. Father also gave the social worker his father's name but said he was "not in the picture when he was growing up."

The social worker tried calling the paternal grandmother, but the number was disconnected. The social worker texted the paternal aunts Jasmine and Jessena, and they

---

[2] Because ICWA uses the term "Indian," we use it as well "to reflect the statutory language." (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1125, fn. 1 (*Dezi C.*).) No disrespect is intended.

denied having any Indian ancestry.  At a hearing on November 2, 2023, Jasmine and Jessena were present in the courtroom and again denied Indian ancestry.

At the jurisdiction and disposition hearing on November 27, 2023, the juvenile court took dependency jurisdiction over all five children, removed them from both parents, ordered family reunification services for both parents, and found that ICWA did not apply.  The boys were placed together with paternal aunt Jessena, and the girls were placed together in a foster home.

At a hearing in May 2024, all three paternal aunts were present in the courtroom and Sherry denied having Indian ancestry.

In October 2024, several months into the reunification period, D.M. was placed in the home of the prospective adoptive mother.  D.M.'s two younger sisters, M.M. and L.M., were placed in the same home the following month.

The parents' reunification efforts were ultimately unsuccessful.  The juvenile court terminated Father's services at the 12-month review hearing in February 2025 and terminated Mother's services at the 18-month review hearing in May.  The following month, Father filed a section 388 petition, requesting that the juvenile court place the girls with the paternal aunt Jasmine, who was willing to adopt them.  In an interview with the social worker, mother said she was opposed to changing the girls' placement because they were strongly bonded to their prospective adoptive mother and doing well in her home.

The juvenile court set separate section 366.26 hearings for the girls and the boys. The girls' hearing took place on September 30, 2025.  Father's counsel withdrew the

section 388 petition on the ground that Jasmine was no longer requesting placement. The juvenile court found that the girls were adoptable, found that the parental benefit exception did not apply to either parent, and terminated both parents' parental rights to the girls.

The parents filed timely notices of appeal. After those notices were filed, the juvenile court set the boys' section 366.26 hearing for February 25, 2026.[3]

DISCUSSION

Mother argues that DPSS failed to discharge its duty of initial inquiry by failing to interview certain extended family members about the girls' possible Indian ancestry and failed to discharge its duty of further inquiry after Father claimed that his mother had Cherokee ancestry. Father joins in those arguments. In a letter brief, DPSS agrees that "there were inadvertent omissions in conducting the [initial] inquiry of whether the children were Indian children and, also in its further inquiry" and states that it does "not oppose a conditional reversal of the order terminating parental rights [over the girls] and remand of the case to properly interview all extended family members pursuant to the ICWA and related California statutes, to document their responses in a report, and to complete a proper further inquiry of all identified tribes." As we explain, we conclude remand is appropriate for DPSS to complete its ICWA investigation.

---

[3] Father's notice of appeal states that he is appealing from the September 30, 2025, order terminating his parental rights over the girls, but Mother's notice says that she is appealing from a nonexistent September 30, 2025, order terminating her parental rights over the boys. Before mother filed her opening brief, we issued an order stating that we were construing her notice to apply to the September 30, 2025, order terminating her parental rights over the girls. In their briefs, both parents challenge the correct order.

"The issue of whether ICWA applies in dependency proceedings turns on whether the minor is an Indian child." (*Dezi C.*, *supra*, 16 Cal.5th at p. 1129.) To be an Indian child within the meaning of ICWA, a child must be either (1) a member or citizen of a federally recognized Indian tribe or (2) eligible for membership or citizenship in such a tribe and the biological child of a member or citizen. (25 U.S.C. § 1903(4), (8); § 224.1, subd. (b)(1).) "The increased protections of ICWA apply 'where the court knows or has reason to know that an Indian child is involved.' " (*Dezi C.*, at p. 1130, citing 25 U.S.C. § 1912(a) & 25 C.F.R. § 23.107(b)(2) (2024).)

"Section 224.2 codifies and expands on ICWA's duty of inquiry to determine whether a child is an Indian child." (*Dezi C.*, *supra*, 16 Cal.5th at p. 1131.) The child welfare department and the juvenile court have "an affirmative and continuing duty" in every dependency proceeding "to inquire whether [the] child . . . is or may be an Indian child." (§ 224.2, subd. (a).) "This 'duty to inquire begins with the initial contact, including, but not limited to, asking the party reporting child abuse or neglect whether the party has any information that the child may be an Indian child.' " (*Dezi C.*, at p. 1132.)

Section 224.2, subdivision (b)(2), specifies that once a child is placed into the temporary or protective custody of a child welfare department, the duty to inquire "includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child." (See Cal. Rules of Court, rule 5.481(a)(1).) " '[E]xtended family member' " means "a person who has reached the age of eighteen and who is the Indian child's grandparent,

aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903(2); see § 224.1, subd. (c)(1) [adopting ICWA definition of "extended family member"].) "While this duty of inquiry is sometimes referred to as the initial duty of inquiry, this is a bit of a misnomer, as the duty 'continues throughout the dependency proceedings.' " (*Dezi C.*, *supra*, 16 Cal.5th at p. 1132.)

When the child welfare department has "reason to believe" that an Indian child is involved, further inquiry regarding the possible Indian status of the child is required. (§ 224.2, subd. (e).) "[R]eason to believe" means that the court or child welfare department "has information suggesting that either the parent of the child or the child is a member or citizen, or may be eligible for membership or citizenship, in an Indian tribe." (§ 224.2, subd. (e)(1).) "The required further inquiry includes (1) interviewing the parents and extended family members; (2) contacting the Bureau of Indian Affairs (BIA) and State Department of Social Services; and (3) contacting tribes the child may be affiliated with and anyone else that might have information regarding the child's membership or eligibility in a tribe." (*Dezi C.*, *supra*, 16 Cal.5th at pp. 1132-1133, citing § 224.2, subd. (e)(2)(A)–(C).) At this stage, contact with a tribe "shall, at a minimum, include telephone, facsimile, or electronic mail contact to each tribe's designated agent for receipt of [ICWA] notices," and "include sharing information identified by the tribe as necessary for the tribe to make a membership or citizenship eligibility determination, as well as information on the current status of the child and the case." (§ 224.2, subd. (e)(2)(C).)

The juvenile court may find that ICWA does not apply to the proceedings if it finds "that an agency's inquiry and due diligence were 'proper and adequate,' and the resulting record provided no reason to know the child is an Indian child." (*Dezi C.*, *supra*, 16 Cal.5th at p. 1134.)  "[E]rror resulting in an inadequate initial . . . inquiry requires conditional reversal" because " '[u]ntil an agency conducts a proper initial inquiry and makes that information known, it is impossible to know what the inquiry might reveal.' " (*Id.* at p. 1136.)

Applying those principles here, we agree with the parties that the record does not support a finding that DPSS made a reasonable effort to interview the following extended family members:  the paternal grandmother and grandfather, the maternal grandfather, and the maternal aunt and uncle.  As to the paternal relatives, despite the fact that the three paternal aunts were readily available for questioning about their parents' contact information and the fact that Father had been living with the paternal grandmother in Moreno Valley at the beginning of the case, the record does not indicate what efforts DPSS made to contact the paternal grandmother and grandfather.  As to the maternal relatives, the record does not indicate what efforts DPSS made to contact Mother's sister or brother nor does it indicate whether DPSS asked Mother any questions about her father, such as whether he was deceased (like the maternal grandmother) or available for interview.

On appeal, Mother argues that the record is unclear as to the maternal grandmother's availability.  She acknowledges that she told the social worker that her mother was deceased, but she argues that "in a May 15, 2024, report the social worker

8

reported that the maternal grandmother was present for a January 22, 2024, visit." As we read that portion of the report, the social worker intended to refer to the *paternal* grandmother being present for the visit. This is because the visit was one of Father's, not Mother's, and we know from the record that the paternal grandmother lived nearby and that Father had a close relationship with her. Moreover, if the maternal grandmother is not deceased and had attended one of Father's visits, then Mother and Father would be in the best position to relay that information. Since neither parent has, the more reasonable scenario is that the reference to the maternal grandmother in the May 15, 2024, report was a typographical error. In any event, if on remand DPSS learns that the maternal grandmother is not deceased and is readily available after reasonable efforts to locate her, then DPSS should interview her about the girls' possible Indian ancestry.

We also agree with the parties that Father's claim that the paternal grandmother had Cherokee ancestry created a "reason to believe" the girls' are Indian children, thereby triggering the duty of further inquiry. On remand, DPSS shall conduct the investigation consistent with all of the requirements of section 224.2, subdivision (e)(2).

Finally, we note that because the boys are the girls' full siblings and because it appears that their dependency proceeding is ongoing, the results of DPSS's future ICWA investigation as to the girls' possible Indian ancestry will apply equally to the boys.

DISPOSITION

The order terminating parental rights to the girls is conditionally reversed. On remand, the juvenile court shall order DPSS to comply with the duty of initial inquiry (§ 224.2, subds. (a), (b)), the duty of further inquiry (§ 224.2, subd. (e)), and, if

9

applicable, the duty to provide notice to the tribes (§ 224.3). If the court subsequently determines that DPSS has complied and that ICWA does not apply, then the court shall reinstate the order terminating parental rights. If the court determines that ICWA applies, then it shall proceed in conformity with ICWA and related California law.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS
J.

We concur:

RAMIREZ
P. J.


MENETREZ
J.

10